UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| YVETTE MULLON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:04-CV-270 PS |
| v. ) | |
| ) | |
| HORSESHOE HAMMOND, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Yvette Mullon brought this claim alleging that she had been discriminated against in violation of the Americans with Disabilities Act ("ADA") and had been wrongfully discharged under Indiana state law in retaliation for filing a workers compensation claim. This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. 23]. Because Mullon's requested accommodations are not reasonable, Horseshoe's Motion for Summary Judgment with respect to her ADA claim is GRANTED. With the federal claim disposed of, the Court declines to retain supplemental jurisdiction of Mullon's Indiana state law claim and it is, therefore, DISMISSED without prejudice.

**I. BACKGROUND**

Yvette Mullon was employed as a slot guest representative ("slot attendant") at the Horseshoe Casino. At the time she applied for employment with Horseshoe, on November 10, 2000, she applied for four different positions: slot attendant, Winner Circle attendant, security dispatcher, and greeter. Mullon was ultimately hired as a slot attendant on November 13, 2000, a job which she performed without major incident from November 14, 2000 to November 10, 2002.

The essential functions of the slot attendant position are not in dispute. They include: 1) filling the slot machines and coin hoppers with coins; 2) clearing any coin jams inside the machine; 3) removing and replacing bags of coins in the reserve area in the bottom of the slot machine; 4) paying jackpot winners; 5) resetting the slot machines and turning off the jackpot light after a jackpot win; and 6) performing minor paperwork and accounting functions. To fulfill these duties, slot attendants had to be able to lift up to forty pounds and open the doors of the machines. There are usually one or two slot attendants assigned to each particular area of the Casino. The slot attendants may assist each other from time to time, but generally work independently.

Mullon claims that on November 10, 2002, she injured her left shoulder during the course of her work. She reported her injury to her supervisor and sought medical care on site. The EMT on duty advised Mullon to go to the emergency room. On November 11, 2002, Mullon went the emergency room where the ER physician diagnosed her with a severe strain of her left shoulder. On November 12, 2002, after a conversation with Thomas Kokandy, Horseshoe's risk manager, Mullon also saw Dr. Kemp, a Horseshoe-affiliated physician. Dr. Kemp diagnosed Mullon with a shoulder strain/sprain. He prescribed medication and physical therapy and restricted her from performing work that included lifting, pushing or pulling over 5 pounds with her left arm.

Upon her return to work, Horseshoe kept Mullon in her regular position, but placed her on light duty. From November 13 through December 4, 2002, Mullon paid jackpots as a slot attendant, but did not fill machines or clear hoppers. Other Horseshoe employees performed these tasks for Mullon.

On December 5, 2002, Mullon's supervisor asked her to open the door of a slot machine to clear the jackpot light. Mullon considered this task to be a violation of her work restriction because to complete the task, she needed to unlock the door with her right hand and pull the door with her left hand. Mullon reported to Kokandy and told him that opening doors was a violation of her work restriction. Kokandy disagreed and sent her back to the floor.

The next day, Mullon called Horseshoe to tell them that she was going to see Dr. Kemp concerning her work restriction and, therefore, would not be at work. Dr. Kemp did not alter Mullon's restriction. Mullon gave Horseshoe the documentation about her visit with the company physician the next day.

Mullon continued to perform her job from December 7, 2002 through January 4, 2003. On January 13, 2003, Mullon visited Dr. Tremaine, an orthopaedic specialist, after being referred to him by Dr. Kemp. Dr. Tremaine instituted new work restrictions that prohibited Mullon from using her left arm entirely. Horseshoe found that the new restrictions kept Mullon from performing even the light duty version of her slot attendant position.

Thus, as part of their workers compensation program, Horseshoe transferred Mullon to the valet department where she worked as a greeter and also alphabetized valet tickets. Horseshoe characterizes Mullon's duties in this position as "made-up." Mullon contends that the work she performed while on total restriction was that of a greeter, a permanent, full-time position at Horseshoe. However, Mullon has presented no evidence that Horseshoe had a vacant greeter position available at the time they were allowing her to work in that capacity.

On March 5, 2003, Dr. Tremaine released Mullon from her work restrictions and on March 6, 2003 Mullon returned to her slot attendant position. However, by the end of her shift,

Mullon was in extreme pain and visited the emergency room after her shift.  The ER physician diagnosed Mullon with a rotator cuff injury and instructed her to see her family doctor the following day.  Mullon took off of work on March 7, 2003 to see her family doctor, Dr. Okolocha.  Dr. Okolocha ordered an MRI and issued new work restrictions.

On March 10, 2003, Mullon spoke with Kokandy and told him about her visit to the emergency room.  Mullon then took vacation from March 12 to 16, 2003.  The parties dispute exactly what happened next – whether Mullon returned to work on the 19th and was sent home or whether she returned on the 20th.   The parties also dispute the facts surrounding a number of additional alleged absences.  Finally, on April 5, 2005, Mullon received a letter of termination from Horseshoe casino indicating that she had violated Horseshoe's attendance policy because she had 9.5 "occurrence points."[1]

## II.  DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1004 (7th Cir. 2000); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 458 (7th Cir. 1999).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477

---

[1]Horseshoe maintains a strictly enforced attendance policy that assigns an "occurrence point" for each absence that is not pre-approved by Horseshoe personnel.  For the reasons set forth below, we need not reach the issue of whether Horseshoe's policy is proper either facially or in its application and, thus, for the sake of brevity, omit the background on this discussion.

U.S. 242, 248 (1986)).  When examining the evidence, the court should resolve all ambiguities and draw all inferences in favor of the non-moving party.  *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 497 (7th Cir. 1999); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir. 1994).

**B.**     **Mullon's ADA Claim**

The ADA prohibits employers from discriminating against an employee on the basis of a qualified disability.  42 U.S.C. § 12112(a).   A plaintiff may show discrimination on the basis of disability in either of two ways: by presenting evidence of disparate treatment or by showing a failure to accommodate. *See Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021-22 (7th Cir. 1997).  Disparate treatment claims arise from language in the Americans with Disabilities Act (ADA) prohibiting covered entities from "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee." 42 U.S.C. § 12112(b)(1).  Failure to accommodate claims, by contrast, stem from language in the ADA defining discrimination in part as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual."  42 U.S.C. § 12112(b)(5)(A).

Mullon brings only a failure to accommodate claim.  Therefore, to survive summary judgment, she must demonstrate that: 1) she was a qualified individual with a disability;  2) that the employer was aware of her disability; and 3) the employer failed to reasonably accommodate the disability.  *EEOC v. Sears, Roebuck & Co.*,  \_\_ F.3d \_\_, 2005 WL 1875729 at \*5 (7th Cir. Aug. 10, 2005); *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001).

5

For purposes of this motion, Horseshoe concedes that Mullon is disabled within the meaning of the ADA. (Horseshoe Brf. at 13-14, n.4). In addition, Horseshoe does not (and could not reasonably) argue that it was unaware of her disability. Instead, Horseshoe claims that Mullon could not have performed the essential functions of her job with or without reasonable accommodation. Further, Horseshoe contends that Mullon was not terminated because of her disability, but rather because she violated Horseshoe's attendance policy.

This case turns on whether Horseshoe could have reasonably accommodated Mullon. To begin with, in its opening brief, Horseshoe argued that Mullon could not be reasonably accommodated within the slot attendant position because such accommodation would require assigning another employee to perform many of the essential functions of Mullon's position. Because Mullon does not contend that Horseshoe should have kept her in the slot attendant position and provided her with a helper as an accommodation, we need not address Horseshoe's argument on this point. (*See* Mullon Brf. at 17)

Instead, Mullon suggests that a reasonable accommodation would have been transferring her to the position of Greeter. She thus argues that she is a qualified individual when provided with a reasonable accommodation in the form of a reassignment to the Greeter position.

The ADA does include "reassignment to a vacant position" as a reasonable accommodation of disability. *See* 42 U.S.C. § 12111(9)(B). However, the Seventh Circuit has limited an employer's obligation to provide this accommodation. In *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir.1996), the Seventh Circuit held that the ADA requires reassignment to a vacant position when the employee is no longer able to perform the essential functions of her employment, even with a reasonable accommodation, and the employee is qualified for the

vacant position. However, the employer's obligation to reassign a disabled employee, does not mean that an employer is obligated to "bump" another employee in order to create a vacancy for the disabled employee. *Id*. Thus, *Gile* held that an "employer does not have to create a new position for the disabled employee." *Gile*, 95 F.3d at 499. Moreover, the language of the statute means what it says. The ADA will only require an employer to reassign a disabled employee to a ***vacant*** position. *Id*.

The burden is on the plaintiff to demonstrate that a vacant position exists and that the plaintiff was qualified for that position. *McCreary v. Libby-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1998); *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) (summary judgment properly granted in reasonable accommodation case where plaintiff fails to submit proof that a position was vacant); *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000) (same).

The situation confronted by the Seventh Circuit in *McCreary* is similar to the case at bar. In *McCreary,* the plaintiff worked at a glass fabrication plant in the three areas of the soldering department: the production line, taping tables, and table stations. *Id*. at 1161. During the course of his employment, the plaintiff suffered a back injury resulting in significant work restrictions that limited his work within his department to the taping tables. *Id*. at 1162. When the taping tables would run out of tape or other parts, the defendant would assign the plaintiff to the quality control department. *Id*. The plaintiff ultimately complained to a safety manager that even the taping work violated his work restrictions and requested that he be reassigned to the quality control department. *Id*. Upholding the District Court's grant of summary judgment, the Seventh Circuit found that:

7

> [The plaintiff] has not put forth any evidence that a vacant position in quality control was available. Rather, he testified that he sometimes worked in the quality control department but only when there was no work in the soldering department for some reason. This is insufficient. Occasional opportunities to work in another department are not equivalent to a vacancy for a permanent position. ***Pointing to a current vacancy is required . . .***

*Id*. at 1165 (emphasis added).

Similarly, in this case, Mullon has failed to raise a genuine issue of material fact because she has not provided the court with any evidence that Horseshoe had a current Greeter vacancy in the valet department. Mullon did not present evidence that Horseshoe hired a person into a greeter position during the period of her disability nor did Mullon provide the Court with any indication (be it a "help wanted" ad or affidavit testimony from any individual in the valet or personnel departments) that Horseshoe was hiring for the greeter position. Indeed, it does not appear that Mullon propounded any discovery on Horseshoe designed to elicit whether a greeter position was vacant. At most, Mullon has testified that a greeter position existed when she applied for her slot attendant position – 2 ½ years before her injury – and that Horseshoe allowed her to temporarily perform greeter functions when she was on complete work restrictions. But this does not establish that a full time position as greeter was available at the time she became disabled. Moreover, the ADA does not require employers to create permanent light duty positions or transform temporary light-duty assignments into permanent positions to accommodate an injured employee who is unable to perform the essential functions of her position. *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir.2002).

In sum, Mullon's only proposed accommodation – reassignment to the position of greeter – is not reasonable because there is no evidence that such a position was even available.

8

Because Mullon has failed to meet her burden to establish a greeter position was vacant and because she has not suggested any other reasonable accommodation, we find that she is unable to prevail on her ADA failure to accommodate claim. We, therefore, GRANT Horseshoe's Motion for Summary Judgment with respect to Mullon's ADA claim.

Accordingly, we do not reach the other issue raised by Horseshoe – whether Horseshoe terminated Mullon, not because of her disability, but instead because of her alleged attendance violations.

**C.      Mullon's Wrongful Discharge Claim**

Mullon also claims that Horseshoe wrongfully discharged her in retaliation for making a workers compensation claim. She was terminated within ten days of her filing the claim. This is a state law claim which may or may not have merit.

A federal court may, at its discretion, decline to exercise supplemental jurisdiction over state law claims that remain after dismissal of the claim over which the court originally had subject-matter jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *see also Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir.1994) ("[G]eneral rule is that, when all federal claims are dismissed before trial, federal district court should relinquish jurisdiction over pendant state-law claims rather than resolving them on the merits."). Indeed, "a district court must have good reason for retaining jurisdiction and must make specific findings as to the balance of judicial economy, convenience, fairness and comity in order to retain jurisdiction. *Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371, 1383 (N.D. Ill. 1996) (citing *Wright*). Here, the factors do not justify retention because 28 U.S.C. § 1367(d) tolled the statute of limitations of Mullon's state law claim during the pendency of this action and will continue to toll the statute

9

of limitations for an additional thirty days from the date of this order. *Id*. Because this is not a removal case in which the case is normally remanded to state court, *see Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 351-352 (1988); *Decatur Mem'l Hosp. v. Connecticut Gen. Life Ins. Co.,* 990 F.2d 925, 928 (7th Cir.1993), we DISMISS Mullon's Indiana state law claim without prejudice.

### III.  CONCLUSION

Because Mullon failed to point to a specific, vacant greeter position, she cannot establish that Horseshoe failed to reasonably accommodate her disability. Accordingly, Horseshoe's Motion for Summary Judgment [Doc. 23] is GRANTED with respect to Mullon's ADA claim. Moreover, because no federal claims remain and because there is no factor requiring this Court to retain jurisdiction over Mullon's state law claim, we DISMISS Mullon's wrongful discharge claim without prejudice.

**SO ORDERED**.

ENTERED: August 18, 2005

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
